**CHEVRON U.S.A., INC.**

v.

**James G. WATT, et al.**

**Civ. A. No. 82–2840.**

United States District Court, E.D. Louisiana.

May 18, 1983.

M. Hampton Carver, New Orleans, La., for plaintiff, Chevron U.S.A., Inc.

Larry Martin Corcoran, Washington, D.C., for defendants.

REASONS

ROBERT F. COLLINS, District Judge.

This action is brought by Chevron U.S.A., Inc. (hereinafter Chevron), challenging the administrative action by the Department of the Interior and the Minerals Management Service (hereinafter MMS) in assessing a civil penalty against Chevron for violations of certain provisions of an Outer Continental Shelf (hereinafter OCS) Order, issued pursuant to the Outer Continental Shelf Lands Act (hereinafter OCSLA), 43 U.S.C. § 1331, *et seq.* Chevron contends that the defendants exceeded their statutory authority in assessing a civil penalty for violations which occurred prior to notice and an opportunity to correct the violations.

The matter is now before the Court on cross motions for summary judgment. There are no issues of material fact outstanding, and the only contested issue is the construction of the particular statutory provision. Therefore, summary judgment is appropriate.

The uncontested facts indicate that Chevron is the lessee and designated operator of Lease OCS 0613, Grand Isle Block 38. The lease was issued by the Department of the Interior and affects a tract lying in the OCS adjacent to the Eastern District of Louisiana. On December 31, 1981, a drilling rig, Penrod 86, arrived at the aforementioned tract and commenced drilling the following day. MMS representatives boarded Penrod 86 on January 5, 1982 to inspect and determine whether the drilling operation complied with the safety and environmental standards set forth in the Gulf of Mexico OCS Order No. 2. The MMS inspectors found that the diverter system and the gas detection system did not comply with the order, and at approximately 11:00 a.m. on January 5, 1982, MMS served upon Chevron written Notice of Incidents of Non-Compliance Detected and Actions Taken. The notice advised Chevron of the two violations and directed Chevron to shut in drilling operations until the deficiencies were corrected. Operations on the rig were discontinued and the violations were rectified. Within approximately five hours of

the notice of non-compliance, MMS authorized Chevron to resume drilling operations.

MMS then initiated civil penalty proceedings against Chevron pursuant to Section 24(b) of OCSLA, 43 U.S.C. § 1350(b). At a hearing held before MMS Reviewing Officer, Dan J. Bourgeois, on April 29, 1982, Chevron conceded the violations in question. Notwithstanding this admission, Chevron contended that the Act only imposes civil penalties following notification of violations and if the violations persist after a reasonable period of time given to correct the violations. By decision dated June 17, 1982, the Reviewing Officer assessed a civil penalty against Chevron for failure to comply with the Gulf of Mexico OCS Order No. 2. He found that the diverter system violation occurred for two days and assessed a $500 fine for each day of this violation. He also held that gas detector violation occurred for six days and assessed a penalty of $5,000 per day for non-compliance. The total civil penalty assessed was $31,000. The escalated penalty for failure to comply with the gas detector requirements reflect both the seriousness of the violations and Chevron's history of gas detection violations during drilling operations in the same general area since April, 1979.

Chevron had the right to appeal the Reviewing Officer's decision to the MMS Director, pursuant to the applicable regulation. This appeal, however, did not suspend the operation of the Reviewing Officer's decision, and Chevron would have been required to pay the penalty while awaiting further administrative action. Chevron elected not to pursue an administrative appeal and brought this action to set aside the Reviewing Officer's decisions and for declaratory and injunctive relief. Chevron remitted the $31,000 civil penalty to MMS after this Court denied Chevron's motion to stay the assessment of said penalty.

### Standing to Sue

While it does not appear to be a contested issue on the cross motions for summary judgment, the defendants had originally challenged Chevron's standing to sue on the grounds that Chevron had not exhausted its administrative remedies in electing to bring this action without taking an administrative appeal. Section 10(c) of the Administrative Procedure Act (hereinafter A.P.A.), 5 U.S.C. § 704, provides in pertinent part:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review .... Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration or, unless the agency otherwise requires by.rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

██ Under this section, an agency has a certain degree of latitude in determining whether to require an appeal to superior agency authority as a prerequisite for judicial review. Nevertheless, if an agency intends to require an administrative appeal as a prerequisite to judicial review, it must also provide that the agency action be inoperative while the administrative appeal is pending. *New England Coalition on Nuclear Pollution v. United States Nuclear Regulatory Commission,* 582 F.2d 87, 99 (1st Cir. 1978); *United States v. Consolidated Mines & Smelting,* 455 F.2d 432, 452 (9th Cir.1971).

██ In this case, Chevron could have appealed the Reviewing Officer's decision to the Director of the MMS pursuant to 30 C.F.R. 250.80–1(1). The regulations, however, expressly provide that the assessed penalty must be paid within thirty days of the Reviewing Officer's decision, even though an administrative appeal is pending. 30 C.F.R. § 250.80–1(O)(3). *See also* Exhibit D of the Complaint for Prohibitory Injunctive Relief, Declaratory Judgment, and Judicial Review of Administrative Action. Since the order assessing a penalty remains operative even during an appeal, the order constitutes a final agency action within the meaning of the A.P.A. Chevron, therefore,

has standing to bring this action under 5 U.S.C. § 704.[1]

### Statutory Construction

The crux of this matter is the construction of Section 24(b) of the OCSLA, 43 U.S.C. § 1350(b), which provides as following:

> If any person fails to comply with any provision of this subchapter, or any term of a lease, license, or permit issued pursuant to this subchapter, or any regulation or *notice* issued under this subchapter, *after notice of such failure and expiration of any reasonable period allowed for corrective action, such person shall be liable for a civil penalty of not more than $10,000 for each day of the continuance of such failure.* The Secretary may assess, collect and compromise any such penalty. No penalty shall be assessed until the person charged with a violation has been given an opportunity for a hearing. (Emphasis added)

Chevron contends that under this provision, civil penalties may only be imposed against a person who continues to violate any provision of the act, lease term, license, permit, regulation, or order [hereinafter collectively the Act] after notice of the violation and a reasonable period to correct the deficiency. The defendants, on the other hand, assert that Section 24(b) provides for civil penalties against anyone who fails to comply with the provisions of the Act. According to the defendants' interpretation, the violator has the right to notice before a penalty is assessed, and MMS may, in its discretion, waive the penalty if the violation is corrected within a reasonable time. In essence then, Chevron contends that the notice and grace period requirements limit the violators' liability, i.e., liability is only imposed for violations which continue after notice and a reasonable time to correct. The defendants allege that notice and the

grace period are simply procedural requisites for assessing a penalty, which do not affect liability.

 The Court agrees with Chevron's construction of Section 24(b) and holds that civil penalties may only be imposed under Section 24(b) for violations which continue after the violator has been notified of the breach and has failed to correct it within a reasonable period allowed. This conclusion is based primarily upon a careful review of the pertinent statute. The first sentence sets forth the conditions of liability:

> If any person fails to comply with any [provision of the Act] after notice of such failure and expiration of any reasonable period allowed for corrective action, such person shall be liable for a civil penalty of not more than $10,000 for each day of the continuance of such failure.

It is clear that the notice and grace period requirements act to modify the conditions of liability. Hence, a civil penalty may only be assessed for each day a violation continues after notice and a reasonable time for corrective action.

Despite the obvious meaning of the liability sentence, the defendants insist that the notice and grace period are prerequisites for assessment of a penalty, as distinguished from liability for a penalty. This interpretation, however, defies the very language of the section. The first sentence, where notice and the grace period appear, does not mention assessment of a penalty. Rather, the first sentence only refers to liability. The manner in which a penalty may be assessed appears in the second and third sentences of the statute. Thus, the defendants' interpretation transposes a critical phase in the statute from one sentence to another. Indeed, a side-by-side comparison of the statute and the department's regulation 30 C.F.R. § 250.80–2(a)(1), upon

---

1. The regulation also provides that if an appeal is not perfected within thirty days of the Reviewing Officer's decision, the order becomes final by the agency. 30 C.F.R. § 250.80–1(L)(1). In this case, the Reviewing Officer's decision was issued on June 17, 1982, and no appeal was ever exercised. Since over thirty days has elapsed from the date of issuance, the order is a final agency decision subject to review.

which the defendants base their construction of the statute, underscores the manner in which defendants attempt to redraft the statute.[2]

| FIRST SENTENCE–STATUTE | FIRST SENTENCE–REGULATION |
|---|---|
| If any person fails to comply with any ... order ..., *after notice of such failure and expiration of any reasonable period allowed for corrective action,* such person shall be liable for a civil penalty of not more than $10,000 for each day of the continuance of such failure. [emphasis added] | Pursuant to subsection 24(b) of the Act, any person who fails to comply with any ... order ..., shall be liable for a civil penalty of not more than $10,000 for each day of continuance of such failure. |
| SECOND SENTENCE | SECOND SENTENCE |
| The Secretary may assess, collect, and compromise any such penalty. | The Director may assess, collect, and compromise a civil penalty *after notice of the failure and the passage of a reasonable period of time to allow for corrective action.* [emphasis added] |
| THIRD SENTENCE | THIRD SENTENCE |
| No penalty shall be assessed until the person charged with a violation has been given an opportunity for a hearing. | No penalty shall be assessed until the person charged with a violation has been given an opportunity for a hearing pursuant to Section 250.80 of this part. |

---

In order to give the statute the meaning which the defendants desire, the critical language in the section has to be rearranged.

Another example illustrating the defendants' distorted construction of Section 24(b) is their contention that the statute "gives MMS the discretion not to assess a penalty if the violation is corrected within reasonable time specified ···· Federal Defendants Memoranda in Support of Motion for Summary Judgment, at page 9. The statute simply does not say this. While the MMS obviously has some discretion in imposing civil penalties, the section does not mention, or even suggest, any discretion in relationship to the grace period allowed for corrective action. Rather, the statute clearly states that liability attaches for violations which continue after notice and expiration of any reasonable period allowed for corrective action.

■ Finally, the legislative history confirms the obvious meaning of the statute. [3]

2. Chevron does not specifically challenge the validity of regulation 30 C.F.R. § 250.80–2(a)(1). Nevertheless, it is clear that defendant MMS relies upon this regulation as the basis for implementing Section 24(b) and that the regulation accurately reflects the defendants' construction of the statute. *See* Decision of the Director, MMS, in MMS–23–Offshore O & G, dated December 31, 1982, at pp. 6–7, Attachment No. 2 of the plaintiff's motion for summary judgment.

3. Both parties contend that the statute is plain and unambiguous. Therefore, the Court need not look beyond the statutory language to construe the act. *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1916); *General Electric Co. v. Southern Construction Co.,* 383 F.2d 135 (5th Cir.1967). Nevertheless, each side has construed the so-called plain and unambiguous language to arrive at divergent meanings. Under these circumstances, resort to the legislative history is appropriate, especially to clarify the issue of whether notice and corrective period are elements of liability under the Act or refer to requisites in assessing a penalty. *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 9–10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976). *United States v. Noe,* 634 F.2d 860, 861 (5th Cir.), *cert. denied* 454 U.S. 876, 102 S.Ct. 355, 70 L.Ed.2d 186 (1981).

Section 24(b) was taken from House Bill 1614 and Senate Bill 9, which were passed in the First Session of the 95th Congress. The Report of the Senate Committee on Energy and Natural Resources to accompany S.9 stated:

Subsection 24(b) provides for a civil penalty to be assessed against any person who after notice of failure to comply and opportunity for a hearing continues to fail to comply with the Act or any regulation or order issued under it.

Senate Report No. 95–284, 95th Cong., 1st Session 82 (1977). Similarly, the House Report of the Outer Continental Shelf Committee describes the purpose of Section 24(b):

Subsection 24(b) provides for a civil penalty to be assessed against any person, who after notice, a reasonable period for corrective action, and a hearing, continues to fail to comply with the Act, any regulation or order under it, or the terms of an OCS lease, license or permit.

House Report No. 950–590, 95th Cong., 1st Session 163 (1977), U.S.Code Cong. & Admin.News 1978, pp. 1450, 1569.

The intent of Congress, as evidenced by the committee reports, could not be clearer. The pertinent provision permits the assessment of a civil penalty only upon a person who continues to violate the act after notice and an opportunity to correct the violations.

This Circuit has generally held that the statutory interpretation by an agency charged with executing the statute is entitled to great weight or deference. *Western Coal Traffic League v. United States,* 694 F.2d 378, 383 (5th Cir.1982); *Mid-Louisiana Gas Co. v. Federal Energy Regulatory Commission,* 664 F.2d 530, 534 (5th Cir.1981), *cert. granted,* —— U.S. ——, 103 S.Ct. 49, 74 L.Ed.2d 56 (1982); *Coca-Cola Co. v. Atchison, Topeka and Santa Fe Railway Co.,* 608 F.2d 213, 222 (5th Cir. 1979). The purpose of this rule is to recognize the agency's expertise in regulatory affairs. "Judicial review is not to be exercised with the zeal of a pedantic schoolmaster who grades papers for a single correct answer, but with the respect that is due

responsible and experienced government officials themselves charged with duties of national importance." *Western Coal Traffic League v. United States, supra* at 383. Despite this restraint, the judiciary remains the final arbiter on statutory construction. "While administrative agencies are expert in technical problems within their jurisdiction, they enjoy no special skill in statutory interpretation, an area in which courts are the final authority." *Id.* at 383–84. Thus, the Court must "honor the clear meaning of the statute, as revealed by its language, purpose and history," *International Brotherhood of Teamsters, Warehousemen & Helpers of America v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 794 n. 20, 58 L.Ed.2d 808 (1979), and reject an agency interpretation which is clearly wrong or unreasonable. *Coca-Cola Co. v. Atchison, Topeka and Santa Fe Railway Co., supra* at 222. In this case, the defendant's interpretation of Section 24(b) is clearly erroneous. The plain meaning and intent of Congress was to impose liability for civil penalty upon a violator who continues to violate the Act after notice and an opportunity to correct the infringement.

### Applying Section 24(b) to the Facts of this Case

Under the aforementioned facts of this case, the $31,000 civil penalty was assessed against Chevron for violations which occurred prior to the notice of non-compliance and an opportunity to correct the violations. It should be added that the violations were remedied within approximately five hours after notice of non-compliance had been issued. Although the civil penalty was imposed in part because of Chevron's past history of similar violations, counsel for the defendants orally admitted that these past violations did not constitute constructive notice of the violations for which penalties were assessed. Based on the uncontroverted facts in this matter, the Court finds that the defendants lacked statutory authority to assess civil penalties against Chevron. Therefore, summary judgment shall be entered in favor of the plaintiff, Chevron.